IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
        v.                    )          CR. NO. 2:06cr271-WKW
                              )
PRESTON GRICE                 )
COREY HARVEY                  )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Defendants Corey Harvey and Preston Grice have filed motions to suppress evidence

in this case (Doc. ## 23, 26), and the government has responded to the motions (Doc. ## 32,

33).  The court held a suppression hearing on February 22, 2007.  For the reasons set out

below, the motions are due to be denied.

### Facts[1]

On November 1, 2005, at approximately 11:45 to 12:00 a.m., Corporal R. J. Steelman,

a police officer with the Montgomery Police Department, received information from a

confidential source (CS) that Preston Grice and "Corey," along with someone else called

"Bunky," were at 879 Holcombe Street cooking or cutting a large amount of crack cocaine.

The CS indicated that a black Cadillac and a dark mini-van, as well as an older dark blue or

black truck and an older Chevy Caprice were parked at the residence, which was next to two

vacant lots at the corner of Holcombe and South Street.  Steelman ran Preston Grice's name

through the police department's narcotics files, and his name came up in the database as

---

[1]  These facts are taken from testimony at the suppression hearing, the warrant application
(Government Exhibit 1), and the police report in this case (Grice's Exhibit 1).  The details recounted in these
sources vary to some extent, although they are mostly consistent.

being involved with drugs in some way.

At approximately 12:20 or 12:30 pm on the same day, Steelman drove to the 800 block of Holcombe Street, but could not locate the house or the vehicles. He then proceeded to the 500 block of the same street and found a black pick-up truck, a mini-van and a black Cadillac at 589 Holcombe Street ("the residence"), which was a white single story dwelling near the corner of Holcombe and South Streets, with a vacant lot on either side. A Caprice was parked at the rear of the residence.

Steelman set up surveillance near this residence. He observed foot traffic throughout the area – people walking down the street and a man (later identified as defendant Harvey) coming from the front of this house and meeting cars. Steelman believed that these activities were consistent with street level drug dealing.

After 20 or 30 minutes passed, a black male (later identified as Leenandora Woods) came out of the residence with a plastic bag in his hand and got into the Cadillac. Steelman called Sergeant Drummond on the radio, told him what he had heard and seen, and asked him to get the Cadillac stopped. Corporal Mills, who was also with the Montgomery Police Department, stopped the Cadillac at Drummond's request. Woods consented to a search of the vehicle, and no drugs were found; however, a narcotics dog thereafter alerted on the center console. Woods took off running on foot, and Lieutenant Bullard used his Taser to stop him. Corporal Conway, the K-9 officer who had arrived with the drug dog, found approximately 450 grams of crack cocaine and 99 grams of powder cocaine in the console area of the car.

2

When Steelman was informed of the results of the search of the Cadillac, he left the residence to prepare an application for a search warrant at the police department's Special Operations Division, and Lieutenant Caviness and Captain Hughes set up surveillance in his place. At some point, DEA special agent Neil Thompson – who had also received a call from the CS, and was riding with Drummond – participated in the surveillance.[2]  Meanwhile, Detective Hamil typed the warrant affidavit as Steelman dictated it. While they were working on the affidavit, officers still on Holcombe Street saw four other vehicles leave the residence. One of these was a black Ford Escort. Detective Wright stopped this car, which took off and had to be pursued. During the pursuit, Wright observed a large quantity of marijuana thrown from the window. A mini-van driven by Preston Grice also left the residence and was stopped. No drugs were found in Grice's possession or in this van.

When Steelman and Hamil completed the warrant affidavit, they took it to municipal judge Troy Massey, who issued a search warrant for the residence. Police executed the warrant and found documents there in the name of Corey Harvey. Harvey, who was observed across the street, was taken into custody. According to the evidence log, police seized numerous bags and bricks of marijuana, bags of crack cocaine, digital scales, a quantity of U.S. currency, and multiple firearms from the residence.

### Discussion

Harvey and Grice contend that the warrant supporting the search of 589 Holcombe

---

[2]  Thompson also helped in the execution of the search warrant and participated in the interviews of the defendants.

Street[3] was invalid for the following reasons:

1.    It contained false information and/or omitted material information.

2.    There was no probable cause for the warrant, which was based on information from a anonymous tip from an informant who was not shown to be reliable or to have personal knowledge.

3.    It failed to describe the premises to be searched adequately.

4.    It was issued by a municipal judge in violation of Fed. R. Crim. P. 41.

        In addition, defendant Grice maintains that the officers' stop of his vehicle was illegal and, therefore, a house key seized from him (and evidence derived therefrom) is due to be suppressed.[4]  The court will address these issues in turn.

False Statements and Omissions

----

[3]  At the suppression hearing in this case, the government questioned defendant Grice's standing to challenge the search of this residence. Although the United States labeled this inquiry as a question of standing, "the Supreme Court recently reminded us that the question '"is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."'" United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999) (citing Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 472, 142 L.Ed.2d 372 (1998)). The court finds that Grice had a reasonable expectation of privacy in the residence. As the defendant proffers, and the government does not dispute, he kept clothes at this location, occasionally stayed overnight, and possessed a key to the residence.  See Rakas v. Illinois, 439 U.S. 128 (1978).

[4]  Defendant Grice also maintains that certain statements by other defendants (Tarsus Lanier and Leenandora Woods) should be suppressed, as their counsel allegedly had a conflict of interest when their proffers were made. The right to a defense conducted by an attorney who is free from conflicts of interest is guaranteed by Sixth Amendment of the United States Constitution. United States v. Ross, 33 F.3d 1507, 1523 (11th Cir.1994) (citing Wheat v. United States, 486 U.S. 153, 160 (1988)).  Grice has failed to establish that he enjoys any kind of third party standing to raise the Sixth Amendment rights of these defendants, which are assigned by the terms of that amendment to "the accused."  See Texas v. Cobb, 532 U.S. 162, 172 n. 2 (2001) ("The Sixth Amendment right to counsel is personal to the defendant and specific to the offense.").

Defendant contends that evidence found in the search should be suppressed because the warrant affidavit contains false information and material omissions.  The affidavit offered in support of the warrant included the following information:

> BEFORE ME, THE HONORABLE W. Troy Massey, JUDGE OF THE MUNICIPAL COURT OF THE CITY OF MONTGOMERY, MONTGOMERY, ALABAMA, THE UNDERSIGNED, CORPORAL R. J. STEELMAN #072, PERSONALLY APPEARED AND STATED THAT HE IS A DETECTIVE WITH AND FOR THE SPECIAL OPERATIONS DIVISION, NARCOTICS BUREAU OF THE MONTGOMERY POLICE DEPARTMENT, MONTGOMERY, ALABAMA AND HE HAS REASON TO BELIEVE THAT COCAINE, A CONTROLLED SUBSTANCE, IS TO BE STORED AND SOLD AT A RESIDENCE WITH NO VISIBLE NUMBERS LOCATED IN THE 500 BLOCK OF HOLCOMBE STREET, MONTGOMERY, ALABAMA.  THE RESIDENCE IS DESCRIBED AS BEING A WHITE SINGLE STORY DWELLING LOCATED ADJACENT TO TWO VACANT LOTS AT THE CORNER OF HOLCOMBE AND SOUTH STREET.  THE RESIDENCE FACES WEST ON HOLCOMBE STREET.  THIS IS IN VIOLATION OF THE CODE OF ALABAMA, 1975, SECTION 13A-12-231.

> THE FACTS TENDING TO ESTABLISH THE FOREGOING GROUNDS FOR ISSUANCE OF AN ANYTIME, "KNOCK AND ANNOUNCE", SEARCH WARRANT ARE AS FOLLOWS:

> PROBABLE CAUSE BEING THAT ON 11/01/2005 AT APPROXIMATELY 1145 HOURS, THE MONTGOMERY POLICE DEPARTMENT NARCOTICS BUREAU RECEIVED INFORMATION FROM AN ANONYMOUS SOURCE THAT A TRAFFICKING AMOUNT OF COCAINE WAS BEING STORED AT A RESIDENCE WITH NO VISIBLE NUMBERS LOCATED IN THE 500 BLOCK OF HOLCOMBE STREET, MONTGOMERY, ALABAMA.  THE ANONYMOPUS [sic] TIP IDENTIFIED THAT PRESTON GRICE AND OTHER SUBJECTS WERE "CUTTING" THE DRUGS AND THAT A BLACK CADILLAC AND A DARK COLORED MINIVAN WERE PARKED IN FRONT OF THE RESIDENCE AS BEING NEXT TO TWO VACANT LOTS AT THE CORNER OF HOLCOMBE AND SOUTH STREET.

> FURTHER PROBABLE CAUSE BEING THAT ON 11/01/2005 AT APPROXIMATELY 1230 HOURS, THE SPECIAL OPERATIONS DIVISION CONDUCTED SURVEILLANCE ON THE RESIDENCE AND

5

OBSERVED A BLACK CADILLAC GTS AND A BLACK MINI VAN PARKED AT THE RESIDENCE. DURING THE SURVEILLANCE, A B/M, LATER IDENTIFIED AS LEEANDORA WOODS DOB:04/09/1977, WAS OBSERVED LEAVING THE RESIDENCE. THIS WRITER OBSERVED THE DEFENDANT PLACED A PLASTIC BAG IN THE BLACK CADILLAC AND LEAVE THE RESIDENCE AT A HIGH RATE OF SPEED.

FURTHER PROBABLE CAUSE BEING THAT A TRAFFIC STOP WAS CONDUCTED ON THE BLACK CADILLAC GTS. DURING THE TRAFFIC STOP, A TRAINED NARCOTICS DOG HANDLED BY DETECTIVE CONWAY ALERTED THAT NARCOTICS WERE IN THE VEHICLE. WOODS THEN FLED ON FOOT FROM THE VEHICLE. APPROXIMATELY 1/4 TO ½ KILOGRAM OF COCAINE WAS LOCATED IN THE VEHICL

FURTHER PROBABLE CAUSE BEING THAT DURING THE STOP OF LAWRENCE [sic] WOOD, THE BLACK MINI VAN LEFT THE RESIDENCE AT A HIGH RATE OF SPEED. A TRAFFIC STOP WAS CONDUCTED ON THE VEHICLE AT WHICH TIME THE VEHICLE FLED. DURING THE VEHICLE PURSUIT, THE DRIVER THREW A LARGE AMOUNT OF MARIJUANA FROM THE VEHICLE. THE DRIVER WAS TAKEN INTO CUSTODY AND IDENTIFIED AS PRESTON GRICE, DOB: 08/24/1973.

THE FOREGOING IS BASED ON THE PERSONAL KNOWLEDGE OF THIS AFFIANT, OTHER MEMBERS OF THE NARCOTICS BUREAU AND FACTS OBTAINED BY THE MONTGOMERY POLICE DEPARTMENT NARCOTICS AND INTELLIGENCE BUREAU, MONTGOMERY, ALABAMA, AND IS MADE FOR THE PURPOSE OF SECURING AN ANYTIME "KNOCK AND ANNOUNCE" SEARCH WARRANT FOR THE DWELLING DESCRIBED AS BEING A WHITE SINGLE STORY DWELLING, LOCATED ADJACENT TO TWO VACANT LOTS AT THE CORNER OF HOLCOMBE AND SOUTH STREET. THE SEARCH WARRANT IS FOR COCAINE, AND ANY OTHER CONTROLLED SUBSTANCES, TO INCLUDE: DRUG PARAPHERNALIA, RECORDS OF DRUG TRANSACTIONS, DRUG BUY MONIES, WEAPONS AND ANY ITEMS LISTED IN ATTACHMENT 1: ALSO TO INCLUDE ANY PERSONS LOCATED AT THE RESIDENCE AND ALL COMMON AREAS, OUTBUILDINGS, AND VEHICLES LOCATED WITHIN THE CURTILAGE THEREOF.

Defendants argue, and the government's witnesses admit, that – while a black mini-van did leave the residence at a high rate of speed, and Preston Grice was in it, as noted in the affidavit – the mini-van was not the car that fled from police during the chase in which a large amount of marijuana was thrown from the vehicle. Instead, the pursuit and the drugs should have been attributed to a Ford Escort driven by another individual, who left the residence at around the same time. In addition, defendants contend that the warrant affidavit materially omitted the fact that, when Grice was stopped in the mini-van, no drugs were found in his possession or in his vehicle.

Defendants' claims must be evaluated under the standard set out in Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the Court held that if an officer makes a false statement knowingly and intentionally or with reckless disregard for the truth in an affidavit supporting a warrant, the false statement must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause. Id. at 171-72. The holding in Franks applies to omissions as well. See, e.g., Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998); Stewart v. Donges, 915 F.2d 572, 582 (10th Cir. 1990); United States v. Haimowitz, 706 F.2d 1549, 1556 n. 3 (11th Cir. 1983); West Point-Pepperell, Inc. v. Donovan, 689 F.2d 950, 959 (11th Cir. 1982); Smith v. Deering, 880 F. Supp. 816, 825 (S.D. Ga. 1994).[5] The warrant is valid if, absent the misstatements, there remains sufficient content

---

[5] Some courts have observed that affidavits claimed to have material omissions, while not immune from the Franks inquiry, are much less likely to merit a Franks hearing than are affidavits containing allegedly false statements, since the mere fact that an affiant did not list every conceivable fact or conclusion in his affidavit does not necessarily render the affidavit invalid. See,

to support a finding of probable cause. <u>Dahl v. Holley</u>, 312 F.3d 1228, 1235 (11th Cir. 2002) (citing <u>Franks</u>, 438 U.S. at 171-72). Similarly, even if defendants carry their burden to prove by a preponderance of the evidence that the warrant application contains a material omission that was made deliberately or with reckless disregard for the truth, "the court must reform the warrant application by ... including the omissions, and then determine whether the reformed application nonetheless establishes probable cause." <u>West Point-Pepperell</u>, 689 F.2d at 959.

In this case, defendants have failed to meet their burden. The evidence does not establish by a preponderance of the evidence that Corporal Steelman and Detective Hamil made the errors and omissions in question either deliberately, or with reckless disregard for the truth. Both officers testified that, at the time they prepared the affidavit, they believed that Grice was in fact driving the Ford Escort. Neither Steelman nor Hamil was present when the officers stopped the Escort or the mini-van; instead, they received information about these stops in "real time" from officers in the field while they themselves were preparing the warrant affidavit. Multiple vehicles were coming and going from the residence at around the same time and, as both officers indicated, there was quite a bit of traffic on both radios (police channel one and Southern Link), including discussion of multiple traffic stops and a pursuit. Steelman and Hamil did not learn until after the search warrant was executed that Grice was not, in fact, the driver of the Escort involved in the pursuit, and that no drugs were

e.g., <u>Mays</u>, 134 F.3d at 815; <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990).

thrown from his vehicle. Thus, the errors in the affidavit were, at most, the result of negligence – either the mistake of the officers relaying the information, or that of Steelman and Hamil themselves. Whoever was responsible for the error, it is clear that "[n]egligent misrepresentations or negligent omissions will not undermine the affidavit." Id.

In addition, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997); see also Dahl, 312 F.3d at 1235 (Warrant valid if sufficient to support a finding of probable cause absent the misstatements). In this case, the reformed warrant affidavit – including the corrections (1) that a Ford Escort, not the mini-van, was the object of the pursuit and the source of the drugs thrown out of the vehicle, and (2) that Grice was driving the mini-van, in which no drugs were found – would show probable cause for the search of the residence. Specifically, the reformed affidavit would establish, *inter alia*, that (1) a confidential source told police that there was a "trafficking amount" of cocaine at a residence on Holcombe Street, (2) the source said that a black Cadillac and a dark colored mini-van were at the residence; (3) on the same day, about 45 minutes later, police found a residence on Holcombe Street with a black Cadillac GTS and a black mini-van parked there[6]; (4) police saw a man exit the residence, place a

---

[6] The warrant affidavit indicated that the anonymous source said that the cocaine was in a residence with no visible numbers located in the 500 block of Holcombe Street. However, as testimony at the suppression hearing established, the source actually told police that the house was at 879 Holcombe Street; it was Corporal Steelman who found the cars identified by the source at 589 Holcombe Street. The court does not consider this discrepancy material to the probable cause determination, particularly here, where two digits are the same in both numbers.

plastic bag in the Cadillac, and drive off at high speed; (5) police stopped the Cadillac and found 1/4 to ½ kilogram of cocaine in the console after a drug dog alerted and the driver fled on foot; (6) another car (not the mini-van) left the residence at high speed and, when the car was stopped, the vehicle fled and the driver threw a large amount of marijuana from the car, and (7) the mini-van that was stopped, which was driven by Preston Grice, did not contain drugs.

A judge's task in deciding whether there is probable cause for a search  "'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before h[er], ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Moody, 977 F.2d 1425, 1431 (11th Cir. 1992) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). A judge need have no more than a "substantial basis" for concluding that probable cause exists, and courts must give great deference to the [] judge's assessment of the facts presented to him or her. Id. This information was clearly sufficient to establish probable cause for a search warrant for the residence.[7]

Anonymous tip

Defendants contend that there was no probable cause for the warrant, which was based in part on a anonymous tip from an informant who, defendants maintain, was not shown to be reliable or to have personal knowledge of the information provided.  This argument is

---

[7]  Even if the correct information concerning the Ford Escort were omitted entirely, the affidavit would still establish probable cause.

without merit.

As noted above, "[p]robable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." <u>United States v. Brundidge</u>, 170 F.3d 1350, 1352 (11th Cir. 1999). The Supreme Court has stressed that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" <u>Gates</u>, 462 U.S. at 232. Although the veracity and basis of knowledge of an anonymous tipster remain relevant to the probable cause analysis, the Eleventh Circuit has recognized that, "[t]o avoid 'rigid' legal rules, <u>Gates</u> changed the 'two-pronged test' of <u>Aguilar v. Texas</u>, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), into a totality of the circumstances test." <u>Brundidge</u>, 170 F.3d at 1352 (citation omitted). "Under the <u>Gates</u> totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs of <u>Aguilar</u>, for assessing the usefulness of an informant's tips, are not independent. '[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for ... by a strong showing as to the other[.]'" <u>Id</u>. at 1352-53; <u>see also United States v. Ridolf</u>, 76 F.Supp.2d 1305, 1308-1309 (M.D. Ala. 1999).

In this case, the anonymous tip[8] discussed in the affidavit was detailed and specific,

---

[8] Steelman indicated in his testimony at the suppression hearing that a confidential source whom he knew provided the information to him, but that this source in turn received the information from another source whom Steelman did not know. Accordingly, Steelman referred to the tipster as "anonymous" in the affidavit.

indicating the amount of drugs involved ("a trafficking amount"), the kind of drug ("cocaine"), the street on which the residence was located ("Holcombe Street, Montgomery, Alabama"), the name of one of the individuals at the house ("Preston Grice"), the specific activity in which he was allegedly engaged ("cutting the drugs"), and the color and make or model of two vehicles at the residence ("a black Cadillac and a dark colored minivan"). In addition, the affidavit indicated that the anonymous source "identified the residence as being next to two vacant lots at the corner of Holcombe and South Street."[9] Details of this kind suggest that the tipster had a good basis for knowledge. Further, the information was not stale, as the informant's tip was provided to Steelman on the same day that the affidavit was prepared.

The affidavit also indicates that police were able to verify the informant's account independently. It establishes that some 45 minutes after police received the tip, an officer conducted surveillance and found the cars described on the street described by the informant. In addition, police observed an individual leave the residence and place a plastic bag in the Cadillac and drive away at high speed. The affidavit indicates that police stopped this car, that a trained narcotics dog alerted to the vehicle, that the driver fled on foot, and that police located a large quantity of cocaine in the vehicle console. This independent police investigation conclusively corroborated the reliability and basis of knowledge of the tipster. What is "critical to a showing of probable cause [is] that the affidavit state facts sufficient

---

[9] Defendants contend that the residence is not at the corner of these two streets. However, Steelman testified at the hearing that there is a vacant lot on either side of the residence, and that one of the two vacant lots is at the corner of Holcombe and South Streets.

to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." <u>United States v. Martin</u>, 297 F.3d 1308, 1314 (11th Cir. 2002).  Here, the information provided in the affidavit, considered under the totality of the circumstances, was sufficient to establish that evidence or contraband would probably be found at the premises to be searched.  "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Gates</u>, 462 U.S. at 231.

<u>Description of the premises</u>

Defendants maintain that the warrant failed to describe the premises to be searched adequately, as the residence searched (589 Holcombe) is not on the corner of Holcombe and South Street.  The court cannot agree.

The warrant in this case described the building to be searched as a "[w]hite single story dwelling adjacent to two vacant lots in the 500 block of Holcombe Street.  The address is further identified to be located at corner of Holcombe Street and South Street with a chain link fence... ." As noted above, testimony at the suppression hearing established that there is, in fact, a vacant lot on either side of the residence, and that one of these two vacant lots is at the corner of Holcombe and South Streets. In addition, the house did prove to be a white, single story residence with a chain link fence located in the 500 block of Holcombe Street, as described in the warrant.

"A warrant's description of the place to be searched is not required to meet technical

13

requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986); see also United States v. Ellis, 971 F.2d 701, 703 (11th Cir. 1992); United States v. Toups, 2007 WL 433562, *5 (M.D.Ala. 2007) (unpublished). In this case, the fact that one of the vacant lots adjacent to the residence, rather than the residence itself, is on the corner of Holcombe and South Streets, is not material. Even if the court considered the warrant's description of the premises to be erroneous on this basis, "[a]n erroneous description of premises to be searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." Id. (citation and internal quotation marks omitted).

The court finds that the warrant's description of the premises to be searched in this case was reasonably particular under the circumstances. "A search warrant must ... be sufficiently precise as not to permit a general search, but the test is the reasonableness of the description. Elaborate specificity is unnecessary." United States v. Strauss, 678 F.2d 886, 892 (11th Cir. 1982). As the Supreme Court has stated, "limitations on the execution of search warrants should be examined in light of 'the need to allow some latitude for honest mistakes that are made by officers in [this] dangerous and difficult process.'" United States v. Owens, 848 F.2d 462, 463-64 (4th Cir. 1988) (citing Maryland v. Garrison, 480 U.S. 79

14

(1987)).

Rule 41

Defendant Grice contends that the search warrant in this case is invalid because it was issued by a municipal judge, rather than a federal magistrate judge, in violation of Fed. R. Crim. P. 41. This argument is without merit.

Fed. R. Crim. P. 41(b)(1) provides that "[a]t the request of a federal law enforcement officer or an attorney for the government ... a magistrate judge with authority in the district – or if none is reasonably available, a judge of a state court of record in the district[10] – has authority to issue a warrant to search for and seize a person or property located within the district." Fed. R. Crim. P. 41(b)(1).  Rule 41 does not govern the search warrant in question in this case because the warrant was issued at the request of an officer of the Montgomery Police Department, rather than a federal law enforcement officer.  As the Fifth Circuit has held, "the 1972 amendment to Rule 41 reflects a Congressional intent that none of Rule 41's requirements apply to state warrants. ... [T]he plain language of the amendment *limits the application of Rule 41(a) to warrants requested by federal officers*. The Rule states that designated persons may issue 'a search warrant authorized by th[e] rule ... upon the request of a federal law enforcement officer or an attorney for the government.' If the warrant is not issued upon the request of a designated person it is not authorized by Rule 41 and, hence, not covered by the rule." United States v. McKeever, 905 F.2d 829, 832 (5th Cir. 1990)

---

[10] In Alabama, "[u]nlike circuit courts and district courts, municipal courts are not courts of record." Ex parte Maye, 799 So.2d 944, 947 (Ala. 2001).

(emphasis added); see also United States v. Smith, 1996 WL 735569, 4 (N.D. Ga. 1996) (unpublished).

   The warrant in this case was issued by a state court and – although the offenses alleged in the warrant would certainly violate federal law – they also violate state law and, thus, are not inappropriate subjects of a state, rather than federal, warrant.  Further, testimony at the suppression hearing established that all but one of the officers involved in the incident (Neil Thompson) were Montgomery police officers,[11] and the decision to pursue federal charges was not made until after the execution of the warrant.   Accordingly, Rule 41(a)'s requirement that the warrant be issued by a state court of record does not apply to this case, and the evidence seized is not due to be suppressed on this ground.  See United States v. Slater, 2006 WL 3779428, *4 (6th Cir. 2006) (unpublished) ("[I]n cases where only a single federal agent consulted on an investigation, did not participate in the process of obtaining a search warrant, and a decision to pursue federal charges was not made prior to the search, we have held that the requirements of Rule 41 do not govern the search.").[12]

Traffic Stop

   Defendant Grice maintains that the officers' stop of his vehicle was illegal and, therefore, a house key seized from him (and any evidence obtained from the use of that key) should be suppressed.  Again, the court cannot agree.

---

[11]  One other officer was "cross-deputized," but he was nevertheless a Montgomery police officer.

[12]  Because the court has determined that police searched the residence pursuant to a warrant that was valid in all respects, it does not reach the question of whether the Leon good faith exception applies to this case.

"[M]inimally intrusive searches and seizures of the person are permissible when a law enforcement officer has an objectively reasonable suspicion that 'criminal activity may be afoot.'" United States v. Dunn, 345 F.3d 1285, 1289 (11th Cir. 2003). "[T]he standard that must be satisfied to justify a Terry stop or search is significantly less onerous than is a showing of probable cause to arrest." Id. An officer making a Terry stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch; the Fourth Amendment requires some minimal level of objective justification for making the stop. Id.; see also United States v. Hensley, 469 U.S. 221, 229 ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion.").

In this case, the officers who stopped Grice had before them information that an anonymous source had reported that there was a "trafficking amount" of cocaine at a residence on Holcombe Street where people were "cutting cocaine." They knew that details relating to this residence had been confirmed by police surveillance a short time later, and that police had thereafter stopped a Cadillac which departed from that residence and found 1/4 to ½ kilogram of cocaine in the console of the car after a drug dog alerted on the car and the driver fled on foot. They also observed Grice's vehicle leaving the same residence soon thereafter.[13] These specific and articulable facts, standing alone, were sufficient to support

---

[13] According to the police report, Grice's car was stopped while other officers were in pursuit of the Ford Escort from which a large quantity of marijuana was thrown. It is not clear whether or not officers knew about the pursuit and the marijuana when they stopped Grice's car, although it appears likely that they knew,

17

a reasonable suspicion on the part of the officers that Grice was involved in criminal activity. Thus, the traffic stop was not unlawful.

## Conclusion

For the forgoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motions to suppress (Doc. ## 23, 26) be DENIED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before March 28, 2007. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

---

at a minimum, about the pursuit.

DONE, this 15th day of March, 2007.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE