IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CASE NO. 2:06-cr-271-WKW |
| ) | |
| PRESTON GRICE  ) | |

## **MEMORANDUM OPINION AND ORDER**

This case is before the court on a Motion for New Trial (Doc. # 115) filed by Defendant Preston Grice ("Grice"). The court has carefully considered the motion and the government's opposition (Doc. # 118). For the reasons below, the motion is due to be DENIED.

### I. BACKGROUND

On November 7, 2007, a jury convicted Grice of conspiracy to distribute or conspiracy to possess with intent to distribute a controlled substance, and distribution or possession with intent to distribute a controlled substance. Grice filed this Motion for New Trial (Doc. # 115), alleging that the government struck a black prospective juror in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

Jury selection for three criminal cases occurred on November 5, 2007. Three days preceding the calling of the venire, all parties were provided with copies of the list of jurors on the venire and questionnaires completed by the venire members. The court used one pool to select juries, and the jury in Grice's case was the last one picked from the pool. The first

jury selected consisted of six black jurors, six white jurors, and two white alternates;[1] the second jury consisted of five black jurors, seven white jurors, and one white alternate.[2]

After the potential jurors were qualified and the first two juries were picked, Grice's jury was selected. The venire for Grice's case consisted of twenty-two potential jurors – two of whom were black and twenty of whom were white.[3] Voir dire spanned a mere five pages of the transcript (Jury Selection Tr. 124-128, Nov. 5, 2007 (Doc. # 112)), all of which was done by the court with follow-up waived by the government and Grice. The government used four peremptory strikes: two on black jurors and two on white jurors. Grice used five peremptory strikes.[4] Grice's jury consisted of twelve white jurors and one white alternate.

At the appropriate time, Grice raised a *Batson* challenge to the government's striking the two potential black jurors.[5] Grice first objected to the government's strike of juror 183, a black female. (Jury Selection Tr. 134:13-22.) The court asked for a response to the *Batson*

---

[1] The first trial was *United States v. Jiles*, No. 07-cr-62 (M.D. Ala.). The undersigned struck the jury for Judge Fuller who presided over the trial, and who requested two alternate jurors.

[2] This jury was selected for the case of *United States v. Ferguson*, No. 07-cr-25 (M.D. Ala.).

[3] The first potential juror was juror 126, the juror whose number was next after the alternate selected for the previous jury. During selection, the court went through the end of the jury list and began again at the top of the list with the jurors who had not been selected the first time through the list. This district does not allow back-strikes.

[4] While Grice used all his strikes on white jurors, besides the two jurors struck by the government, there were no other non-white jurors on the venire that Grice could have stricken.

[5] Grice also challenged the jury wheel, and this appeared to the court to be his main challenge and concern. He argued that by having to take the last jury, the racial composition of the venire was not reflective of the district. (Jury Selection Tr. 131:1-132:16.) Because it was construed as a challenge to the wheel, it was denied as untimely. (Jury Selection Tr. 134:3-12.) Grice did not raise this argument in his motion for a new trial.

challenge, and the government explained that it struck the juror because the juror indicated in her questionnaire that her son was a "part-time addict," stated during *voir dire* that her son "had gotten in trouble" for using weapons, and stated that she had "some health problems."[6] (Jury Selection Tr. 135:22-136:10.) Without stating a specific ground, Grice also objected to the striking of juror 15, a black male. Because a *prima facie* case of discrimination existed, the government was asked to respond. The government explained that it struck juror 15 because he indicated on his juror questionnaire that he disliked and distrusted the legal system.[7] (Jury Selection Tr. 136:11-16.) The court denied the challenge as to each juror, finding that the government had overcome the presumption of discrimination.[8] (Jury Selection Tr. 138:4-13.) The entire exchange relating to juror 15 takes up twenty-four lines of text in the transcript. (Jury Selection Tr. 136:11-20; 127:8-17; 138:10-13 (ruling).)

In the present motion, Grice renews his *Batson* challenge only as to the government's striking of juror 15. Grice's sole complaint is that there was no meaningful *voir dire* of juror 15 with respect to his distrust and dislike comment, and that the meaning of his questionnaire

---

[6] During the qualifying of the jury, juror 183 indicated that serving on a jury potentially could be a hardship because she frequently needed to urinate, but the court found that she was qualified to sit on the jury. (Jury Selection Tr. 62:1-24.) Later, when the first jury was being selected, she answered affirmatively the question about whether a member of her family had an experience that related to the use and possession of guns. (Jury Selection Tr. 85:8-13; 92:1-93:18.) During that colloquy, she stated that her son was shot in the 1980s and that she did not like guns. (Jury Selection Tr. 92:1-93:4.)

[7] The jury questionnaire used in the Middle District of Alabama consists of eighty-eight questions. Question 87 asks: "Which most accurately describes your feelings about the judicial system? Highly respect, somewhat respect, little or no respect, dislike or distrust." (Juror Questionnaire 9.)

[8] After the challenge was denied, the government offered other comments "as a supplement to the court's finding." (Jury Selection Tr. 138.) The court did not consider those comments in support of its ruling, nor did the court supplement its findings.

answer is "subject to speculation." (Def. Mot. at 4 (Doc. # 115).) In its written response, the government repeated its position that it struck juror 15 because "he indicated in response to question 87 on the questionnaire that he did not like and did not trust the legal system." (Gov't. Resp. ¶ 10 (Doc. # 118).)

## II.  STANDARD OF REVIEW

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to grant a new trial is within the sound discretion of the trial judge. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir. 1987).

## III.  DISCUSSION

The Supreme Court has held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." *Batson*, 476 U.S. at 86. In *Batson*, the Supreme Court put forth a three-part framework to determine "whether a peremptory strike was motivated by racial or ethnic discrimination." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038 (11th Cir. 2005); *see also Snyder v. Louisiana*, _ U.S. _, 128 S. Ct. 1203, 1207 (2008). The Supreme Court has emphasized that "[t]he trial court has a pivotal role in evaluating *Batson* claims." *Snyder*, 128 S. Ct. at 1208.

First, the party challenging the peremptory strike must state a *prima facie* case of discrimination by "establishing facts sufficient to support an inference of racial discrimination." *Ochoa-Vasquez*, 428 F.3d at 1038 (internal quotation marks and citation

omitted). In the Eleventh Circuit, a *prima facie* case is "an absolute precondition to further inquiry into the motivation behind the challenged strike." *Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000). The proponent of the strike must then "articulate a race-neutral explanation for the challenged strike." *Ochoa-Vasquez*, 428 F.3d at 1038. "[T]he prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges." *Batson*, 476 U.S. at 98 n.20 (internal quotation marks and citation omitted). The court then determines the persuasiveness of the justification and "decides whether the objector has carried its burden of proving purposeful discrimination." *Ochoa-Vasquez*, 428 F.3d at 1039. The burden of persuasion "rests with, and never shifts from, the opponent of the strike." *Johnson v. California*, 545 U.S. 162, 171 (2005) (internal quotation marks and citation omitted).

### A.  Prima Facie *Case of Discrimination*

The determination of whether the party raising the *Batson* challenge has stated a *prima facie* case of discrimination depends on the "totality of the relevant facts." *Batson*, 476 U.S. at 94. In *Batson*, the Supreme Court gave as an example of relevant circumstances "a 'pattern' of strikes" against members of a particular race. *Id.* at 97. "[T]he mere fact of striking a juror . . . does not necessarily create an inference of racial discrimination." *Lowder*, 236 F.3d at 636. However, a defendant can establish a *prima facie* case "where a party strikes all or nearly all of the members of one race on a venire." *Id.* at 637. Here, Grice established a *prima facie* case of discrimination because the government struck all potential

5

black jurors.

### B. *The Government's Stated Reason*

The government articulated a race-neutral reason to explain why it struck juror 15: because he indicated on his juror questionnaire that he disliked and distrusted the legal system. (Jury Selection Tr. 136:11-16.) *Batson* instructs that "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose." 476 U.S. at 97. Neither the prosecutor nor Grice, however, questioned any juror with respect to a response or no-response to question 87. "Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (internal quotation marks and citation omitted).

### C. *The Persuasiveness of the Government's Justification*

The court now weighs again the persuasiveness of the government's reason and determines if Grice has carried his burden of showing purposeful discrimination. There are several considerations. The Supreme Court has emphasized that this step "involves an evaluation of the prosecutor's credibility," *Snyder*, 128 S. Ct. at 1208, and "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge," *id.* at 1213 (internal quotation marks and citation omitted). "[T]hese determinations of credibility and demeanor lie peculiarly within a trial judge's province," *id.*

at 1208 (internal quotation marks and citation omitted), because the trial judge "is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere," *Rice,* 546 U.S. at 343 (Breyer, J., concurring). The trial court is also tasked with considering the genuineness (not the reasonableness) of the explanation for the strike, and the totality of the circumstances. *United States v. Walker*, 490 F.3d 1284, 1294 (11th Cir. 2007). When weighing the totality of the circumstances, "all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder*, 128 S. Ct. at 1208.

Grice makes one argument: he claims that the government acted with discriminatory intent because there was no *voir dire* of juror 15 about why he distrusted and disliked the legal system. Prior to the court's rejection of the challenge, juror 15's answer to that question was the only reason given by the prosecution for the strike, and the court easily found it to be a race-neutral explanation.[9] As Grice correctly argues, the Supreme Court has held that when a court evaluates whether the race-neutral reason for striking a juror was pretextual "[t]he failure [of a party] to ask [about the issue] undermines the persuasiveness of the claimed concern." *Miller-El v. Dretke*, 545 U.S. 231, 250 n.8 (2005) ("*Miller-El II*"). When considering the totality of the circumstances surrounding the government's explanation, this case is not analogous to *Miller-El,* especially when *Miller-El* is viewed in context. In *Miller-*

---

[9] The court would find it odd, bordering on bizarre, for a person who distrusts and dislikes the judicial system to be placed on a jury, particularly in a criminal case. The only relevant inquiry of such a juror would be "why," and it really does not matter why. One would just as likely use a babysitter who dislikes and distrusts children, and such a babysitter would be just as amenable to rehabilitation as would juror 15.

7

*El*, the prosecutor's stated reason for striking a juror was pretextual because when the prosecutor had asked the potential juror about other issues during *voir dire*, he had barely asked the juror about what became the stated reason for striking the juror. Moreover, in *Miller-El*, the prosecutor supplied a second rationale after his first reason was shot down, a scene that "reek[ed] of afterthought." *Id.* at 246.

This *Miller-El* exchange occurred in an atmosphere and context far different than the instant case. *Miller-El* was a 1986 capital murder case in Dallas in which the *voir dire* lasted five weeks; the trial occurred before *Batson* was decided; the state trial court found that exclusion of blacks was not systematic, but "it may have been done by individual prosecutors in individual cases," *Miller-El v. Cockrell*, 537 U.S. 322, 328 (2003) ("*Miller-El I*") (internal quotation marks and citation omitted); indeed, several former prosecutors testified post-trial that the state prosecutor's office had a systematic policy of excluding blacks from juries; there was blatantly disparate questioning of jurors according to race (*e.g.*, black prospective jurors were given a graphic description of the execution process, while white prospective jurors were given a benign description, if any at all); the Texas "jury shuffle" had been used extensively by the prosecutor to disrupt panels with significant black ratios; and by the time the case reached the United States Supreme Court the first time, the state had conceded that a *prima facie* case of intentional discrimination existed. In this intense factual atmosphere, the Court

> considered the type and quantum of record evidence required to demonstrate a *Batson* violation. The Court did not announce any new elements or criteria

> for determining a *Batson* claim, but rather simply made a final factual and evidentiary determination of that particular petitioner's *Batson* claim pursuant to the "demanding but not insatiable" standard set forth in 28 U.S.C. § 2254(d)(2) and (e)(1).

*Murphy v. Dretke*, 416 F.3d 427, 439 (5th Cir. 2005) (internal citation omitted). Indeed, the Supreme Court pointed out importantly that "no racially neutral reason has ever been offered in this case." *Miller-El II*, 545 U.S. at 254.

There is a clear distinction between *Miller-El* and this case, where a racially neutral explanation was offered, the potential juror was not individually asked any questions during *voir dire* by either side, and no other potential jurors were asked about the issue which concerned the government. Indeed, a *voir dire* process with less intensive questioning is one of the results of a questionnaire with eighty-eight questions, as the Eleventh Circuit has recognized in a case arising in this district: " . . . since the venire members had all filled out questionnaires preceding jury selection, *[] it [was] likely that one or both sides would attempt to strike jurors based solely on their answers on the questionnaire.*" *Lowder*, 236 F.3d at 638 (emphasis added). The government and Grice rested their respective judgments of juror 15 on the questionnaire responses and the *voir dire* in the two previous cases struck that day. The government struck juror 15 solely on the basis of his written confirmation of his distrust and dislike of the judicial system, and the court is aware of no authority, and none has been cited, that would compel the government to try to rehabilitate a prospective juror with that attitude. From its examination of the questionnaires of the Grice jurors, the alternate and juror 15, the court is satisfied that no juror who served on Grice's jury answered

question 87 as juror 15 did.[10]

In further consideration of the totality of the circumstances, the *voir dire* in this case was not infected with the kind of blatant and overt discrimination (and total lack of *any* race-neutral explanation) the Supreme Court found present in *Miller-El*. It was in that context that the *Miller-El* Court reiterated the rule from *Ex Parte Travis*, 776 So. 2d 874 (Ala. 2000) concerning the failure to engage in any meaningful *voir dire* examination as one of a plethora of factors confirming, under all the circumstances, a *Batson* violation. Thus, the *Miller-El/Travis* argument advanced by Grice is unpersuasive as pointing to a single element of *voir dire* sufficient to find purposeful discrimination when a race-neutral explanation is presented. The *Miller-El/Travis* rule is that failure to conduct *voir dire* on a subject of concern "is evidence *suggesting*" sham and pretext – it does not *require* that conclusion. *Miller-El II*, 545 U.S. at 246 (emphasis added).

The final consideration present when the court rejected this *Batson* challenge was the credibility of the government attorney. This exercise in open court entailed an assessment of the candor and demeanor of the attorney, the context and atmosphere of the proceedings, and the genuineness of the explanation given for the strike. Having determined there was sufficient cause to advance to the second and third *Batson* steps, the sole factor favoring a finding of intentional discrimination was that 100% of the two[11] black prospective jurors

---

[10] By separate order, these questionnaires will be made a part of the record.

[11] This circumstance occurred randomly. As evidenced by the two prior juries selected out of this pool, there was no shortage of black jurors from which to choose – until Grice's case was called. The fact

were struck by the government. At the time, Grice did not advance the argument that the government had failed to conduct an adequate *voir dire* on juror 15, or any other relevant argument, for that matter. It was a short exchange in a routine criminal case. Factors cautioning against finding purposeful discrimination were a genuine race-neutral reason for striking the juror, the absence of any questions to the panel that would indicate a systematic pattern of exclusion of black jurors, the absence of any history of this prosecutor or her office of racial discrimination in the selection of jurors, and frankly, the credible demeanor of the attorney advancing the explanation of the strike. "The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis," *Miller-El I*, 537 U.S. at 340, and the court would be remiss not to observe that this particular Assistant United States Attorney has tried numerous criminal jury cases before this court and enjoys strong credibility before the undersigned. Nothing occurred in this jury selection to undermine that fact.

### IV. CONCLUSION

At bottom, Grice's objection on the day of trial was directed more to the makeup of the *venire* than to the striking of juror 15. (Jury Selection Tr. 131:1-132:16.) However, his only relief in the posture of this case is to establish purposeful discrimination in the

---

that two jurors equaled 100% of the black jurors is relevant to the government's use of 50% of its strikes on blacks and 50% on whites. Had the government used 100% of its strikes on blacks, keeping four off the jury, it would have been a different case. Furthermore, "[a] party advancing a Batson argument ordinarily should come forward with facts, not just numbers alone." *Lowder*, 236 F.3d at 637 (internal quotation marks and citation omitted). No other facts were presented by Grice.

government's strike of juror 15. Because he has not carried his burden of establishing purposeful discrimination, Grice's Motion for New Trial is DENIED.

DONE this 4th day of September, 2008.

                                      /s/ W. Keith Watkins
                                 UNITED STATES DISTRICT JUDGE